# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES T. RUSSELL,                )
                                 )
        Plaintiff,       )
                                 )
        v.               )    02: 06-cv-1668
                                 )
BOARD OF PUBLIC EDUCATION OF     )
THE SCHOOL DISTRICT OF PITTSBURGH,)
                                 )
        Defendant.

## MEMORANDUM OPINION AND ORDER OF COURT

October 21, 2008

      Presently before the Court for disposition is the MOTION FOR SUMMARY JUDGMENT, with brief in support, filed by Defendant, Board of Public Education of the School District of Pittsburgh ("PBE") (*Document Nos. 26 and 27*, respectively), the brief in opposition filed by Plaintiff, James T. Russell (*Document No. 30*), and the REPLY to Plaintiff's brief in opposition filed by PBE (*Document No. 34*).

      The issues have been fully briefed and the matter is ripe for disposition. After a careful consideration of the motion, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the Motion for Summary Judgment will be granted in part and denied in part.

### Procedural Background

      Plaintiff, James T. Russell ("Plaintiff"), brought this lawsuit on December 19, 2006, by the filing of a one-count Complaint against his former employer, PBE. Plaintiff alleges that in 2003 he was denied a promotion to Area Commander in retaliation for his prior complaints of race discrimination against PBE. Although retaliation is the singular theory of liability, Plaintiff

advances this claim under 42 U.S.C. § 1981, Title VII, the Pennsylvania Human Relations Act ("PHRA"), and the Pittsburgh Code of Ordinances.

PBE has filed the instant motion for summary judgment in which it argues that it is entitled to judgment as a matter of law on Plaintiff's claim because, *inter alia,* Plaintiff is unable to establish a *prima facie* case of unlawful retaliation. In the alternative, PBE argues that Plaintiff should be precluded from claiming, either directly or indirectly, that his disabilities (obesity, back problems, hand injury, and/or psychological issues) were caused by the alleged retaliation and, therefore, Plaintiff should be precluded from seeking any form of relief on or after his date of disability.

## Background

As the law requires, all disputed facts and inferences are to be resolved most favorable to the Plaintiff.

Plaintiff worked as a full-time security guard for PBE from September 1976 to June 1977, a position from which he was laid off. Plaintiff worked as a bus aide for PBE for the 1977-1978 school year. From September 1979 to June 1982 and September 1982 to June 1989, Plaintiff worked for Laidlaw Bus Company as a transportation coordinator. In 1989, Plaintiff applied for and obtained a position with PBE as a School Transportation Agent. On or about September 9, 1992, Plaintiff applied for and received a position with PBE as a Security Aide at Brashear High School.

In 1992, Plaintiff secured his Act 120 certification as a municipal police officer. Several months after receiving his Act 120 certification, Plaintiff applied for and received a position with PBE as a Police Officer, effective March 1993.

In July 1996, Robert Fadzen ("Fadzen") was promoted to Chief of School Security. Prior to his promotion, Fadzen was a Community Relations Specialist in the Division of School Safety. Between the years 1998 and 2000, at least thirteen (13) individuals filed administrative charges of discrimination and/or lawsuits in which they alleged that Fadzen had discriminated against them. Plaintiff was one of the individuals in this group of thirteen (13) who had alleged that Fadzen had discriminated against him.

In 1998, Fadzen was placed on leave without loss of pay in part because PBE decided to investigate the allegations that had been made against him. Fadzen returned to work upon the completion of the investigation.

On the morning of April 1, 1999, Plaintiff complained to Fadzen about alleged racially unequal distribution of overtime in the department. According to Plaintiff, within hours, Fadzen retaliated against him by contacting Plaintiff's Area Commander Augustus Spruill, and telling him that Plaintiff smelled like marijuana and ordering the Commander to "smell" Russell.

On or about August 30, 1999, Plaintiff requested that he be considered for the bike patrol unit, a position which was considered a lateral promotion with no salary increase. According to Plaintiff, Fadzen summarily rejected Plaintiff for this position.

On September 7, 1999, Plaintiff requested a shift change to an 8:00 a.m. to 4:00 p.m. shift. Fadzen denied Plaintiff's request.

On March 29, 2000, Plaintiff filed a lawsuit in the United States District Court for the Western District against Fadzen and PBE in which he alleged race discrimination and retaliation (*Russell I*).

In April of 2000, Fadzen called Russell into his office and accused him of putting a scratch on the floor.

In August of 2000, Fadzen instituted disciplinary proceedings against Russell in which he accused him of an infraction which allegedly occurred over six months earlier.

On or about September 3, 2000, Plaintiff again requested and Fadzen again denied him a shift transfer to an 8:00 a.m. to 4:00 p.m. schedule.

On December 7, 2000, Plaintiff filed a charge with the Pennsylvania Human Relations Commission ("PHRC") against PBE, in which Plaintiff alleged discrimination and retaliation and named Fadzen as an "abettor."

On or about April 2001, Plaintiff filed with the PHRC an Amended Charge in which he again complained of discrimination and retaliation.

In the Spring of 2002, PBE began to approve settlements in many of the cases which had been filed against it and against Fadzen in his individual and official capacities. Plaintiff signed a Settlement Agreement in *Russell I* on August 21, 2002. The settlement had been approved by the Board on April 24, 2002, and a Board representative signed the settlement agreement on September 17, 2002. *Russell I* was dismissed with prejudice on October 9, 2002.

On or about December 9, 2002, Fadzen formally informed Dr. Dwight Mosely, Chief of Human Resources, and Ruth Ciemielewski, Assistant Director of Human Resources, that Area Commander Gus Spruill was retiring. At that time, he recommended that Joseph Garrett ("Garrett"), a PBE police officer, be promoted to the Area Commander position. The Area Commander position at issue was posted on or about February 14, 2003.

4

To "apply" for an Area Commander position an interested employee would have to submit a letter and a resume. Garrett never submitted a letter nor a resume; Plaintiff submitted both a letter and resume. Neither Garrett nor Plaintiff were interviewed for the Area Commander position; although Fadzen testified in his deposition that he had interviewed both Garrett and Russell for the vacancy.

On February 26, 2003, Fadzen recommended to the Board that Garrett be promoted to the position of Acting Area Commander. On March 3, 2003, Garrett was promoted to Acting Safety Commander. Ruth Ciemielewski advised Plaintiff that he had not been selected for the position.

On or about March 19, 2003, Plaintiff filed a second Complaint with the PHRC, which was cross filed with the Equal Employment Opportunity Commission ("EEOC") in which he claimed he was denied a promotion on February 2003, in retaliation for filing a discrimination case in the past.

<u>Plaintiff's Disability</u>

On March 14, 2003, Plaintiff sustained an injury to his left hand and wrist and filed an injury report on March 18, 2003. Plaintiff received worker's compensation from March 15, 2003 through June 9, 2003 for the March 14, 2003 left hand and wrist injury. Plaintiff's hand and wrist injury worsened and he again received worker's compensation for the period June 30, 2003 through October 12, 2003. Plaintiff returned to work full time in 2004.

Plaintiff received worker's compensation for the period July 28, 2005 through August 25, 2005. In a letter dated November 18, 2005, Plaintiff's treating psychologist, Lawrence B. Haddad, Ph.D., recommended that Plaintiff "take time off work, beginning immediately,

5

November 21, 2005, and that such time off should continue to January 2, 2006." Plaintiff did not return to work after November 18, 2005.

In January 2006, Plaintiff applied for Social Security Disability Income ("SSDI"). An Administrative Law Judge issued a Decision in February 2007 wherein he determined that Plaintiff suffered from both physical and mental impairments and found that Plaintiff was disabled dating back to November 21, 2005. Plaintiff remains disabled and continues to receive SSDI.

On or about February 1, 2006, Plaintiff applied for a disability pension through the Pennsylvania School Employees Retirement System. Plaintiff's request for disability retirement was approved with an effective date of March 1, 2006. Plaintiff continues to receive disability retirement benefits through the Pennsylvania School Employees Retirement System.

## STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id*. (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Distilled to its essence, the summary judgment standard

requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

With respect to summary judgment in discrimination cases, the Court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987). The task of the Court is not to second-guess employment decisions, but is instead to determine whether the employment decisions were motivated by an illegal discriminatory or retaliatory purpose. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 525 (3d Cir. 1992), *cert. denied*, 510 U.S. 826 (1993).

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

DISCUSSION

A.   Retaliation Claim

A *prima facie* case of retaliation[1] requires that Plaintiff has the initial burden of establishing the following three elements: (i) that he engaged in protected activity; (ii) that PBE took adverse action after or contemporaneous with his protected activity; and (iii) that a causal link exists between Plaintiff's protected activity and PBE's adverse action. *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006).

Since this is a federal employment discrimination case in which no direct evidence of discrimination is presented, the analysis of the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), provide the formulation for allocating the requisite burdens of proof and production for the purpose of the pending motion for summary judgment.

Generally speaking, a plaintiff who has no direct evidence of discrimination must establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802-803. If a *prima facie* case is established, the defendant must then articulate a legitimate, nondiscriminatory reason for treating the plaintiff in an adverse manner. *Id*. If the defendant articulates a legitimate, nondiscriminatory reason for the adverse treatment, the plaintiff can defeat a motion for summary

---

[1]   For the purpose of this Opinion only, the Court will assume that Plaintiff has a private right of action under the City Code and that he exhausted his remedies under the PHRA. Further, the same analysis applies to Plaintiff's § 1981, Title VII, and PHRA retaliation claims. *See Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002) (analysis for Title VII and PHRA retaliation claims are identical); *Joseph v. Cont'l Airlines, Inc.*, 126 F. Supp. 2d 373, 376 n.2 (E.D. Pa. 2000) (treating discrimination claims under Title VII, § 1981, PHRA and city ordinance as identical).

judgment by pointing to some evidence from which a rational finder of fact could reasonably either disbelieve the employer's articulated explanation or "believe that an invidious discriminatory reason was more likely than not a[ ] determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994). The plaintiff "may succeed in this either directly by persuading the court [for the purpose of summary judgment] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256.

"The precise elements of a *prima facie* case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.' " *Swierkiewicz v. Sorema N.A.,,* 534 U.S. 506, 512 (2002) (*quoting Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)). In *Jones v. School District of Philadelphia*, 198 F.3d 403, 411 (3d Cir. 1999), the United States Court of Appeals for the Third Circuit explained that "the elements of a *prima facie* case depend on the facts of the particular case [,]" and that "a *prima facie* case cannot be established on a one-size-fits-all basis." Thus, "the *prima facie* test remains flexible and must be tailored to fit the specific context in which it is applied." *Sarullo v. United States Postal Service*, 352 F.3d 789, 797-798 (3d Cir. 2003).

PBE contends that summary judgment should be granted in its favor because Plaintiff cannot establish a *prima facie* case of unlawful retaliation.

1. *Prima Facie Case*

PBE does not contest Plaintiff's *prima facie* case with respect to elements one and two. PBE has asserted, however, that Plaintiff is unable to establish the existence of a causal

9

connection between his protected activity and PBE's 2003 decision not to promote Plaintiff to the position of Area Commander.

To establish a "causal link" for the purpose of establishing retaliation, a plaintiff may rely on a broad array of evidence, including, but not limited to, temporal proximity and evidence of ongoing antagonism. *Abramson v. William Patterson College of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 283-84 (3d Cir. 2000). Temporal proximity alone may be sufficient to show causation where it is unusually suggestive. If the timing is not unusually suggestive, a court must look at the evidence as a whole, including evidence of intervening antagonism, to determine if it is sufficient to raise an inference of retaliation. As the United States Court of Appeals for the Third Circuit has stated:

> Although timing and ongoing antagonism have often been the basis for the causal link, our case law clearly has allowed a plaintiff to substantiate a causal connection for the purposes of the *prima facie* case through other types of circumstantial evidence to support that inference.

*Farrell,* 206 F.3d at 280-81.

In the case at bar, Plaintiff alleges that PBE's 2003 decision not to promote him is directly linked to his protected activity, which began in 1999 and continued through September 2002, when the settlement agreement for his prior lawsuit was fully executed. The Court finds and rules that it would not be appropriate to conclude that Plaintiff has adduced sufficient evidence to establish a clear causal connection based upon temporal proximity alone between his protected activities, which ended in 2002, and the 2003 decision of PBE not to promote him to Area Commander.

Plaintiff must, therefore, adduce probative evidence of ongoing antagonism or implausibilities in PBE's reasons for the adverse action. Plaintiff alleges that ongoing antagonism

existed from the time Plaintiff first complained to Fadzen in 1999 of discrimination. The summary judgment record reflects the following:

- April 1, 1999 - Plaintiff complained to Fadzen about racially unequal distribution of overtime. Within hours, Fadzen accuses Plaintiff of "smelling" like marijuana;

- August 1999 - Plaintiff applied for a bike patrol unit position, for which Fadzen rejects his application;

- September 7, 1999 - Fadzen denied Plaintiff's request for a shift change;

- March 29, 2000 - Plaintiff filed *Russell I,* a federal lawsuit against Fadzen and the School District in which he alleges race discrimination and retaliation;

- April 2000 - Russell is called into Fadzen's office and required to bring union representation for allegedly putting a scratch on the floor;

- August 2000 - Fadzen instituted disciplinary proceedings against Plaintiff for an alleged incident which occurred over six (6) months earlier. Plaintiff also alleges that during this time period, he was subjected to additional retaliatory acts which include being assigned extra work and more dangerous duties, being forced to wait five (5) hours for a mechanic, and being asked if a "crack pipe" belonged to him;

- December 7, 2000 - Plaintiff filed a charge of discrimination with the PHRC against the School District, and names Fadzen as an abettor;

- April 2001 - Plaintiff filed an Amended Charge with the PHRC in which he alleged discrimination and retaliation against Fadzen;

- April 24, 2002 - The School District and Plaintiff agree to settle *Russell I* for $26,000;

- September 17, 2002 - Plaintiff's settlement agreement is fully executed;

- October 9, 2002 - the Court dismisses Plaintiff's lawsuit with prejudice;

- December 9, 2002 - Fadzen recommends Garrett for the promotion to Area Commander;

- February 14, 2003 - Area Commander position is posted per the District's practices;

- February 19, 2003 - Plaintiff applies for the Area Commander position by submitting a cover letter and resume, but is never interviewed;

- February 26, 2003 - The Board of Directors of PBE approves Garrett for Area Commander promotion.

The Court finds and rules that Plaintiff has adduced sufficient evidence of ongoing antagonism for a reasonable jury to find a causal connection between his protected activities and the denial of the promotion in February 2003. It is not disputed that Plaintiff made numerous complaints both informal and formal throughout his tenure with PBE. In light of all of the evidence, the Court finds and rules that a reasonable fact-finder could conclude that the failure to promote Plaintiff was in retaliation for his engaging in protected activities. Plaintiff has therefore adduced sufficient evidence to establish a *prima facie* case.

2. *PBE's Legitimate Business Reason*

Once a plaintiff demonstrates a *prima facie* case of retaliation, the burden of production shifts under the *McDonnell Douglas* framework to the defendant to articulate a legitimate, nonretaliatory reason for its adverse employment decision. In this case, PBE argues

that Garrett was a better candidate to be Area Commander.  Specifically, PBE contends that Plaintiff was not promoted because of his alleged work deficiencies, *to wit*:  poor communication skills, poor relationships with administrators and co-workers, a history of discipline, and poor appearance.

The Court finds and rules that PBE has articulated a legitimate, non-retaliatory reason for its employment decision.

3.   *Pretext*

Because PBE has offered a legitimate and non-retaliatory reason for its employment decision*,* Plaintiff must be afforded the opportunity to prove by a preponderance of the evidence that PBE's explanation was pretextual.  *Reeves*, 530 U.S. at 143.

> Pretext is not demonstrated by showing simply that the employer was mistaken . . . Instead the record is examined for evidence of inconsistencies or anomalies that could support an inference that the employer did not act for its stated reasons.

*Sempier v. Johnson & Higgins,* 45 F.3d 724, 731 (3d Cir.), *cert. denied*, 515 U.S. 1159 (1995). The Court of Appeals for the Third Circuit has explained that to defeat a summary judgment motion, the plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."  *Olson v. GE Astrospace,* 101 F.3d 947, 951-52 (3d Cir. 1996).  Thus, in order to defeat a motion for summary judgment, Plaintiff must identify evidence that establishes a reasonable inference that PBE's proffered non-

retaliatory explanation "is unworthy of credence.*"* *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 268 (3d Cir. 2005).

Plaintiff argues that a variety of factors "cast serious doubts" about Fadzen's rationalizations for selecting Garrett over Plaintiff for the Area Commander position. For example, Fadzen testified that he engaged in a legitimate job selection process in accordance with the policies of the Human Resources Department. Therefore, according to the deposition testimony of three PBE Human Resources Department employees, for each legitimate job selection process, there should be a job posting "file," which would contain, at a minimum, the job posting notice, the applications received, and a list of the candidates who applied for the position. However, PBE could produce no such file for the 2003 Area Commander position. Moreover, the only writing by Fadzen with regard to the Area Commander position is a December 9, 2002 memo, drafted approximately two (2) months before the position was posted, which recommended Garrett for the position.

Fadzen also testified that Plaintiff was not promoted because of his alleged work deficiencies, *to wit:* poor communication skills, poor relationships with administrators and co-workers, a history of discipline, and poor appearance. However, a review of Plaintiff's personnel file reflects that Plaintiff was rated as "satisfactory" or "above average" on every performance appraisal, specifically including: "written reports," "neatness," "communicates effectively," and "maintains appropriate, positive relationships with all individuals and groups."

The Area Commander posting instructed applicants to submit a letter and resume. As per School District practice, an applicant who failed to apply within five (5) days of the posting

would not be considered. The summary judgment record reflects that Garrett did not submit a letter or resume. In contrast, Plaintiff submitted both a letter and a resume.

The Court finds and rules that Plaintiff's unlawful retaliation claim cannot be decided on the summary judgment record because genuine issues of material fact are in dispute. Accordingly, the Court finds and rules that summary judgment in PBE's favor is not appropriate on Plaintiff's unlawful retaliation claim.

2.  <u>Claim for Lost Wages or Other Equitable Relief Subsequent to Date of Disability Determination</u>

In the alternative, PBE requests that Plaintiff be precluded from seeking lost wages or other equitable relief subsequent to the date of his disability determination, i.e., November 21, 2005. For example, Plaintiff seeks reinstatement and lost wages (including front pay) subsequent to his disability determination date.

As a general rule, employers are not responsible for wage loss during an employee's period of disability. Thus, plaintiffs have been precluded from recovering damages for periods during which they were deemed totally disabled. *See Shomide v. ILC Dover, Inc.,* 521 F. Supp. 2d 324, 334-335 (D. Del. 2007) (dismissing claims for back and front pay under Title VII based on Plaintiff's social security disability during these time periods).

However, employers may be responsible for wage loss during periods of disability when such disability might not have occurred but-for the employer's actions. Plaintiff argues that "the facts in the record show that Russell's 2005 disability was work related, i.e., might not have occurred but-for the District's actions." Pl's Br. at 19. In particular, Plaintiff argues that his

"debilitating depression and anxiety was caused by Fadzen's continued harassment and retaliation." Pl's Response to Def's Stmt of Mat. Facts, ¶ 140.

During the Social Security Administration ("SSA") hearing, Plaintiff testified that he can walk for only 30-45 minutes without taking a break, can stand for 30-45 minutes before his back starts to hurt, and can only sit for one hour at a time. He also testified that he can lift or carry only about ten (10) pounds throughout a workday. In response to the Administrative Law Judge's inquiry as to what would prohibit Plaintiff from performing a full-time job, Plaintiff testified that his hand and back conditions would limit him from working a full-time job.

Moreover, when asked by the Administrative Law Judge if he had any problems with depression or anxiety before he stopped working, Plaintiff testified that "the job itself you have depression and anxiety on, but it just got worse and worse and worse and worse."

At the hearing, the Administrative Law Judge issued a bench decision in which he found, *inter alia*, the following:

• Plaintiff suffers from both physical and mental impairments.

• Plaintiff appears to have fairly profound limitations in the nondominant hand and has back pain; and

• "[T]he principal limitation in this case arises from the depression and anxiety that Mr. Russell suffers . . . It would appear that a great deal of this is a result of his not being able to pursue his profession."

The Administrative Law Judge issued a Decision in February 2007 in which he favorably ruled for Plaintiff and determined that Plaintiff was disabled as of November 21, 2005. In the Notice of Decision, the Administrative Law Judge summarized his decision as follows: "I

found you disabled on November 21, 2005, because of depression, reduced function and pain in the left hand, lower-back pain, and obesity so severe that you are unable to perform any work existing in significant numbers in the national economy."

In his deposition taken in this case, Plaintiff confirmed that his current condition is basically the same as it was at the time he was deemed disabled by the SSA and that he currently could not work as a police officer because of his depression, anger, and emotions, and the pain in his back and hand.

The Court finds and rules that Plaintiff's claims that his disability would not have occurred but-for his employer's actions is without merit. Plaintiff sustained an injury to his left hand and wrist on March 14, 2003; nothing in the record reflects that this physical injury was caused by PBE's alleged discrimination and/or retaliation. Plaintiff was further found to be disabled because of severe obesity; nothing in the record reflects that his obesity is caused by PBE's alleged discrimination and/or retaliation. Likewise, while Plaintiff argues that his depression and anxiety was caused by Fadzen's continued harassment and retaliation, he testified during the SSA hearing that "the job itself you have depression and anxiety on, but it just got worse and worse and worse and worse." The record is completely devoid of any reference that Fadzen's alleged "continued harassment and retaliation" caused Plaintiff's depression and anxiety.

For all these reasons, Plaintiff will be precluded from seeking lost wages or other equitable relief for any period subsequent to the date of his disability determination, *i.e.,* November 21, 2005.

## Conclusion

Viewing the facts in the light most favorable to Plaintiff, the Court finds that genuine issues of material key facts are in dispute with regard to Plaintiff's unlawful retaliation claim. Thus, summary judgment will be denied on that issue.

However, summary judgment will be granted as to PBE's request that Plaintiff be precluded from seeking lost wages or other equitable relief subsequent to the date of his disability determination, *i.e.*, November 21, 2005.

Accordingly, the motion for summary judgment will be granted in part and denied in part. An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES T. RUSSELL, | ) |
| Plaintiff, | ) |
| v. | )  02: 06-cv-1668 |
| BOARD OF PUBLIC EDUCATION OF THE SCHOOL DISTRICT OF PITTSBURGH, | ) |
| Defendant. | ) |

## ORDER OF COURT

AND NOW, this 21st day of October, 2008, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that the Motion for Summary Judgment filed by Defendant, Board of Public Education of The School District of Pittsburgh, is **GRANTED IN PART AND DENIED IN PART** as follows:

(i) Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiff's claims of retaliation brought under 42 U.S.C. § 1981, Title VII, the Pennsylvania Human Relations Act, and the Pittsburgh Code of Ordinances; and

(ii) Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's claims, either directly or indirectly, that his obesity, back problems, hand injury or psychological issues were caused by Defendant's alleged discrimination and/or retaliation. Further, Plaintiff is not entitled to lost wages or other equitable relief for any period subsequent to November 21, 2005, the date of his disability determination.

It is further **ORDERED** that Plaintiff shall file his Pretrial Statement on or before **November 7, 2008**, and Defendant shall file its Pretrial Statement on or before **December 2, 2008.**

A pretrial conference is scheduled on **December 17, 2008 at 9:00 a.m.** in Courtroom 6C. The conference shall be attended by an authorized representative of each party, together with trial counsel for each party.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: Edward J. Feinstein, Esquire
Stember Feinstein Doyle & Payne, LLC
Email: efeinstein@stemberfeinstein.com

Janice M. Pintar, Esquire
Stember Feinstein Doyle & Payne, LLC
Email: jpintar@stemberfeinstein.com

Brian P. Gabriel, Esquire
Campbell Durrant Beatty Palombo & Miller, P.C.
Email: bgabriel@cdblaw.com